**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|   |   |   |
|---|---|---|
| SHAWN LAMONT CRAWLEY, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 19-10741(FLW) |
| | : | |
| v. | : | |
| | : | **OPINION** |
| ANDREW M. SAUL, | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant, | : | |

**WOLFSON, Chief Judge:**

Shawn Lamont Crawley ("Plaintiff") appeals from the final decision of the Commissioner of Social Security, Andrew M. Saul ("Defendant"), denying Plaintiff disability benefits under Title II and XVI of the Social Security Act (the "Act"). After reviewing the Administrative Record ("A.R."), the Court finds that the Administrative Law Judge ("ALJ") properly weighed and assigned little weight to the opinion of Eric Williams, M.D. Accordingly, the ALJ's decision is **AFFIRMED**.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born in 1972 (Appl Br. ¶10) and was 42 years old on the alleged disability onset date February 1, 2015. (Moving Br. ¶ 4.)**.** He completed the twelfth grade in 1989, and reported his past work as a barber. (Moving Br. ¶ 4.) Plaintiff was incarcerated for twenty-one years and eight months prior to being released from prison in 2011. (Appl Br. ¶ 1.) Prior to the onset of Plaintiff's alleged disability, Plaintiff worked as a barber for two years. (Appl Br. ¶1.)

On February 11, 2015, Plaintiff filed an application for supplemental security income, based on his disability, stemming from diabetes, knee problem, back problem, and headaches, beginning on February 1, 2015. (A.R. 21.) On February 11, 2015, Plaintiff applied for supplemental security income. (A.R. 111). On August 21, 2015, the Social Security Administration denied Plaintiff's claim. (A.R. 112-116). Moreover, on October 29, 2015, the Social Security Administration denied Plaintiff's request for reconsideration, finding that the previous determination denying Plaintiff's claim was proper under the law. (A.R. 120-22).

Thereafter, Plaintiff requested a hearing, which was held on December 12, 2017, before ALJ Scott Tirrell. (A.R. 23.) In a written decision dated May 7, 2018, the ALJ determined that Plaintiff was not disabled between February 1, 2015 and April 4, 2016; was disabled between April 5, 2016 and May 2, 2017; and Plaintiff's condition improved beginning on May 3, 2017, such that he was no longer disabled after that date. (A.R. 17-42) Plaintiff requested review by the Appeals Council, which was denied on February 22, 2019. On July 8, 2019, Plaintiff filed the instant appeal to challenge the ALJ's decision.

### a.   Review of Medical Evidence

Plaintiff has a history of diabetes, knee and back problems, and headaches, for which he sought treatment with Meenal Patil, M.D., Eric Williams, M.D., Bonnie Richards, D.O., Ronniel Nazarian, M.D., Youssef Josephson, D.O., and Jacqueline Gettys, M.D.

In February 2015, Plaintiff was examined by Dr. Williams at Capital Health for complaints of diabetes, hypertension, and mild back pain without radiculation. (A.R. 400-405.) Dr. Williams noted that Plaintiff's pain was due to chronic disc disease, but it was controlled by opioid analgesics. *Id*. Plaintiff had a normal appearance, was in no distress, had a good range of motion in his extremities, no deformities, some decreased extension and flexion in the spine, intact cranial

2

nerves, normal muscle bulk, normal muscle tone, intact balance, and full strength. *Id*. Dr. Williams started Plaintiff on Oxycontin and Percocet for breakthrough pain. *Id*. Plaintiff returned in August 2015, six months after the original examination, reporting that his back pain was not controlled with medication and he suffered from the same decreased flexion and extension in his spine. (A.R. 396-99 *Id*.) Dr. Williams increased Plaintiff's medication, and commented that he would refer Plaintiff to pain management if further adjustment was needed. *Id*.

At the request of the State Agency, Francky Merlin, M.D., examined Plaintiff on June 23, 2015. (A.R. 382-87). Dr. Merlin noticed Plaintiff was well-developed, obese, and in no distress. *Id.* Plaintiff had a normal gait and station with no difficulty getting on and off the table. *Id*. at 382-83. He could flex his spine from zero to 90 degrees, was able to squat or walk on his heels and toes, had some tenderness in his lumbar spine, and had crepitus and pain in his knees with a normal range of motion. *Id*. at 383. Plaintiff had full motor strength in all extremities except slightly limited in the left (4/5), normal reflexes, and negative straight leg raise tests. *Id*. Lumbar spine images revealed mild degenerative changes, most pronounced at L5-S1, but no fractures or focal bony lesion. *Id*. at 387.

Plaintiff also visited two State Agency physicians, Morris Feman, M.D., and David Tiersten, M.D., in August and October 2015 respectively. (A.R. 93-94, 105-106.). Both physicians reviewed the medical evidence and found that Plaintiff could stand and walk for up to six hours in an eight-hour weekday, and sit for up to six hours in an eight-hour weekday. *Id*. Dr. Tiersten noted additional limitations such as avoiding concentrated exposure to vibration and hazards. (A.R. 105-106.)

In February 2016, one year after the original consultation, Plaintiff returned to Capital Health to obtain stronger pain medication. (A.R. 633-37). Bonnie Richards, D.O., referred Plaintiff

to pain management. *Id*. Two months later, in April 2016, Plaintiff returned, because his pain had become constant and throbbing. (A.R. 628-32.) Plaintiff complained that his right leg had also become weak and he had trouble scheduling a pain management appointment. *Id*. According to Dr. Richards, "he was in no distress; had moderate pain bending forward, but otherwise had good range of motion and no deformities; some spasms and tenderness in the lumbar spine; a steady gait; pain with movement of the right lower extremity; and normal muscle bulk, tone, and balance." *Id*. Dr. Richards prescribed a trial of Medrol and diagnosed Plaintiff with sciatica and worsening right lower extremity weakness. *Id*. Plaintiff, again, returned two weeks later with reported back pain and moderate to severe radiation down his right leg that did not improve with Medrol. (A.R. 423-27). Dr. Richards noticed worsening symptoms and gave him a handicapped placard form. *Id*.

In April, Plaintiff met with Meenal Patil, M.D., for pain management. (A.R. 528-32). Plaintiff complained of pain in his lower back, primarily on the right side, pain with flexion and extension, concern for lumbar radiculopathy, and bilateral knee pain. *Id*. Dr. Patil reported the following:

> Plaintiff was healthy-appearing and in no distress; walked with a cane; had largely normal neurological findings except for diminished light touch sensation at L4-L5 on the right; normal mental status; an antalgic gait favoring the right; forward flexed body posture; normal range of motion in the lumbar spine except limited flexion and extension; lumbar spine lordosis; tenderness to palpation over the paraspinal muscles overlying facet joints on the right side; normal extremities but limited (4/5) motor strength in the right knee flexors and extensors, right ankle dorsiflexors, right plantar flexors, and right hip flexors.

*Id*. Dr. Patil advised she would begin prescribing opioids and recommended a lumbar spine MRI and bilateral knee x-rays. *Id*.

In May 2016, Plaintiff's MRI revealed, "degenerative disc disease and posterior element spondylosis in the lumbar spine without critical spinal canal stenosis; multilevel foraminal stenosis most marked at L5-S1 with likely compression of existing L5 nerve root; and severe stenosis of

4

the right neural foramen at L4-5. *Id*. Later that month, Plaintiff received knee injections (A.R. 521-22), then received lumbar injections in early June 2016, as recommended by Dr. Patil. (A.R. 519-20).

In June 2016, Plaintiff returned to Dr. Williams, and an examination revealed no distress, a good range of motion, no deformities, decreased extension and flexion in the spine, normal mental status and coordination, normal cranial nerves, normal muscle bulk and tone, intact balance, and full strength in all extremities. (A.R. 617-22). In that same month, Plaintiff reported 50% relief from the knee injections, but the lumbar injections didn't alleviate his pain. *Id*. Dr. Patil recommended an L5-S1 interlaminar ESI and a surgical referral. (A.R. 506-13). Additional injections in July and August 2016, did not improve Plaintiff's pain significantly, and thus, Dr. Patil recommended no further injections. (A.R. 501-05).

Next, Plaintiff saw Ronniel Nazarian, M.D., at Princeton Orthopaedic Associates. A.R. 723. Dr. Nazarian reported, "Plaintiff was in no distress; ambulated with a cane; had negative straight leg raises on both side[s]; decreased sensation through his shin; and full (5/5) strength except for right tibialis anterior." (A.R. 731). Dr. Nazarian also reviewed the Plaintiff's MRI which revealed multilevel foraminal stenosis, but no central canal stenosis. *Id*. He also reviewed the x-rays which revealed no scoliosis, some disc degeneration at L5-S1 with small anterior osteophyte formation, no evidence of instability on flexion or extension, and no lesions. *Id*. Dr. Nazarian recommended injections or physical therapy for Plaintiff's right lower extremity radicular pain in the L4, L5, and S1 distributions. *Id*.

Plaintiff visited Dr. Patil in September 2016, and an examination revealed largely the same as the one in May 2016. (A.R. 489-93). Plaintiff also expressed that he was interested in a spinal cord stimulator trial, and in December 2016, he decided to proceed with it. *Id*.

5

During an examination in January 2017, Plaintiff was in overall good health, however Dr. Williams noted that Plaintiff's back pain was "disabling" and he remained "medically disabled." (A.R. 663-66).

In February 2017, Plaintiff had a spinal cord stimulator (SCS) implanted. (A.R. 463-64). Thereafter, Plaintiff reported a greater than 50 percent improvement in pain with functional improvement, as well. (A.R. 453, 458). Before his next spinal procedure, Plaintiff reported an 80 percent reduction in pain following the original procedure. (A.R. 446, 463). Youseff Josephson, D.O., indicated that Plaintiff was a candidate for a permanent SC implant because of his, "outstanding improvement to h[is] pain and function with the trial…" (A.R. 455). On April 11, 2017, Plaintiff had the permanent SCS implanted. (A.R. 446). During an examination one week later, Plaintiff reported no new issues. (A.R. 443).

In April and May 2017, Plaintiff had three follow-up examinations with Dr. Williams, which all resulted in similar findings: "Plaintiff was in no distress, healthy appearing, and ambulating normally; had normal muscle strength and tone; no tenderness, malalignment or bony abnormalities; normal movement of all extremities; a normal back; negative straight-leg raising test; normal gait and station; intact sensation; normal reflexes; normal coordination; and normal cranial nerves." (A.R. 581-90).

During pain management examinations in May and June 2017, Plaintiff continued to experience a 50 percent decrease in pain with medication. (A.R. 431-40). He appeared healthy, had normal neurological findings, except for diminished light touch sensation in L4-L5 on the right, had a gait favoring the right side, limitation in spinal range or motion, normal lower extremities except 4/5 strength in the right hip flexors. (A.R. 434, 439). Plaintiff also reported that

his conditions did not affect his daily activities. *Id*. Due to Plaintiff's continued knee pain, Dr. Patil performed genicular nerve blocks in June 2017. (A.R. 429-30).

In July 2017, Plaintiff stated he was doing well with the SCS but still had flares. (A.R. 422). At his pain management meeting in August 2017, Plaintiff reported 10/10 pain again, and Dr. Patil noted he would be seeing a surgeon about his chronic radicular pain. (A.R. 413-18). In September 2017, Plaintiff reported a 50 percent decrease in pain from medications and that he was still benefitting from his spinal cord stimulator. (A.R. 409). Plaintiff's condition remained the same in July 2017, and as a result, Plaintiff expressed that he was not interested in surgery. *Id*. Dr. Patil restarted Lyrica for neuropathic pain. (A.R. 410). Plaintiff was also examined at Capital Health in September 2017, by Jacqueline Gettys, M.D. (A.R. 692). Then, he was in no distress and ambulating normally, but complained of chronic pain, and was, again, referred to pain management. (A.R. 695).

In December 2017, Plaintiff returned to Dr. Williams due to a backache. (A.R. 734). Upon examination, "[Plaintiff] was in no distress; ambulating normally; had normal muscle tone; normal movement of all extremities; no tenderness or bony abnormalities; a normal back with full range of motion and no tenderness; and a negative straight leg raise." (A.R. 737-38). Despite the normal findings, Dr. Williams wrote a Physical Assessment in which he stated Plaintiff's limitations:

> Plaintiff could not walk without rest or pain; sit for only one hour in an eight-hour work day; stand and walk for zero hours in an eight-hour work day; required up to four breaks during an eight-hour workday for between 20 and 40 minutes; could occasionally lift 10 pounds; had limitations with his hands, fingers, and arms; and would be absent more than four times a month from work.

(A.R. 720-22).

### b.  Review of the Testimonial Record

In connection with the disability application he submitted in August 2015, Plaintiff completed a functional report, which stated that he wakes up every morning looking for work, but there were not a lot of opportunities for someone who has been incarcerated. (A.R. at 211). He also stated that his hands go numb when caring for his hair, shaving, and feeding himself. *Id.* Moreover, Plaintiff indicated that his cooking habits changed because he does not have a stable place to live and cannot stand for a long time. *Id.* He claimed that he drives alone and shops three times a week. *Id.* He also stated that he can lift up to 50 pounds, but only walk for 5-10 minutes before needing rest. *Id.*

On December 12, 2017, Plaintiff appeared and testified at a hearing before the ALJ, during which he spoke about various matters, including his then-daily routine, living situation, and physical capabilities. (A.R. 48-76). Plaintiff lives with his wife, 31 year-old stepson, and 14 month-old son. (A.R. 53). Plaintiff testified that that he spends all day watching television and reading religious books in a recliner. (A.R. 67-68). He attends religious service once a week for 20 minutes during which he sits for the duration. (A.R. 69). Plaintiff testified that he is able to drive short distances and can bathe himself with help, standing or using the shower chair in his bathroom. (A.R. 58, 60-61). He explained that he could not perform his previous work as a barber, because he could not stand for more than a few minutes. (A.R. 56.) Plaintiff testified that, at best, he could stand for "about 15 minutes, 20 minutes, if that" before needing to either sit or lie down. (A.R. 57.)  In addition, Plaintiff expressed that he was unable to do a desk job because his medication tends to make him want to lay down. (A.R. 50, 70). Plaintiff testified that he has used a cane, daily, since  2014, and that he takes oxycodone, as need, typically two or three times a day. (A.R. 54, 72).

Ms. Tanya Edgehill testified as a Vocational Expert ("VE") at the hearing. (A.R. 77, 247). The ALJ provided the VE with six hypothetical scenarios, positing the following question:

> [A]ssume that the individual would be limited to light work exertionally… with the following limitations. The individual could occasionally climb ramps and stairs; could never climb ladders, ropes, or scaffolds… could frequently balance…occasionally stoop, kneel, crouch, or crawl…could never work at unprotected heights, work with dangerous machinery, and could never tolerate concentrated exposure to vibrations…could such an individual perform the claimant's past work?

(A.R. 78). The VE responded, "[w]ith those limitations, the work as a barber, yes, would still exist." *Id*. When asked whether there were any unskilled occupations in the national economy that the hypothetical individual above could perform, the VE provided that such an individual could work in the following positions: labeler, DOT # 920.687-126; garment folder, DOT # 789.687-066; hand packager, DOT # 669.687-074 *Id*. The VE testified that these jobs, in aggregate, are nationally available in the amount of 100,000, 90,000, and 100,000, respectively. (A.R. 78-79).

The ALJ posed a second hypothetical: "(a)ssume everything from the first hypothetical, but assume that the individual would be limited to sedentary work exertionally. With those limitations I assume the individual could not perform the claimant's past work." (A.R. 79). The VE responded, "(t)hat's correct" and provided positions the individual could work in: order clerk, DOT # 209.567-014; assembler, DOT # 739.687-066, table worker, DOT # 739.687-182. She testified that these jobs are nationally available in the amount of 120,000, 90,000, and 100,000, respectively. *Id*.

The ALJ further posed a third hypothetical: "starting with the first hypothetical… (i)f I were to further limit that… the individual would only be able to occasionally balance; and could never knee or crawl…what if any impact would that have…?" The VE answered, "(t)here's no impact on the past work." She further stated that Plaintiff's previous work would still exist and

there would be no impact on the three sample jobs given from the first hypothetical. (A.R. 80).

The ALJ's fourth hypothetical was:

(I)f the individual would require one to two minutes of standing at the workstation after 30 minutes of sitting and would require one to two minutes of sitting at the workstation after 30 minutes of standing or walking during which time the individual would be off task in addition to regularly schedule breaks, what, if any impact would that have…?

(A.R. 80-81). The VE responded, "the jobs I gave you still exist" in reference to the six sample jobs previously provided. (A.R. 81).

The ALJ's fifth hypothetical was: "again, the same type of question, if the individual would require the use of a cane…when walking, what, if any, impact would that have…?" *Id.* at 82. Again, the VE replied, "(a)s far as past work, he can't perform the job with the use of a cane. . . .It would preclude all light work," and "There would not be any impact on sedentary jobs." *Id.*

Finally, the ALJ's sixth hypothetical was: "the individual would be off task 15 percent or more of the workday or the individual would be absent two or more times per month on average, would there be any work for such an individual?" (A.R. 82-83). The VE answered, "(n)o" and said that would be the case if either or both of those stipulations were present. (A.R. 83).

### c. The ALJ's Findings

The ALJ issued a written decision on December 12, 2017, and determined that Plaintiff was disabled from April 5, 2016 to May 2, 2017, but has not been disabled since that date. (A.R. 38). The ALJ applied the standard five-step process in considering whether Plaintiff had satisfied his burden of establishing disability.

First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2015, the alleged onset date. (A.R. 25). Second, the ALJ held that Plaintiff had the following severe impairments: "lumbar spine degenerative disc disease with radiculopathy; chronic pain syndrome; degenerative joint disease of the bilateral knees; and obesity." *Id.* In

addition, the ALJ found that Plaintiff had the following non-severe impairments: "a history of diabetes mellitus; vitamin D deficiency, benign prostatic hyperplasia, hypertension, and generalized anxiety disorder." *Id*. However, in the third step, the ALJ determined that these conditions together did not meet or equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List").

Fourth, the ALJ found that prior to April 5, 2016, Plaintiff possessed the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), with some limitations:

> claimant could occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance; occasionally stoop and crouch; never kneel or crawl; never work at unprotected heights or with dangerous machinery; and could never tolerate concentrated exposure to vibrations. In addition, the claimant would require 1-2 minutes of standing at the workstation after 30 minutes of sitting, and would require 1-2 minutes of sitting at the workstation after 30 minutes of standing or walking, during which time he would be off task in addition to regularly scheduled breaks during the day.

*Id*. at 25. The ALJ reached this conclusion based upon Plaintiff's medically determinable impairments, but also found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were only partially consistent with the medical evidence. *Id*. Although Plaintiff received treatment prior to April 5, 2016, that treatment was essentially routine and conservative in nature. (A.R. 29). Furthermore, there were no medically supported opinions from treating physicians indicating Plaintiff had been disabled during the period prior to April 5, 2016. *Id*. Therefore, based upon his RFC and physical demands from past work, the ALJ concluded that Plaintiff was able to perform prior work as a barber before April 5, 2016. (A.R. 30).

Fifth, the ALJ determined that Plaintiff was able to perform other available work prior to April 5, 2016. (A.R. 31). In reaching this determination, the ALJ considered Plaintiff's RFC, age, education, work experience, and the VE's testimony that indicated Plaintiff was capable of making

a successful adjustment to other work that existed in the national economy. *Id*. Given all of Plaintiff's physical capabilities and limitations, the VE testified that occupations existed in the national economy such as:

- Labeler (D.O.T. code 920.687-126; SVP 2; Light) with more than 100,000 jobs in the national economy;

- Garment Folder (D.O.T. code 789.687-066; SVP 2; Light) with more than 90,000 jobs in the national economy; and

- Hand Packager (D.O.T. code 559.687-074; SVP 2; Light) with more than 100,000 jobs in the national economy.

*Id.* Based on Plaintiff's RFC, physical capabilities, and the testimony of the VE, the ALJ determined that Plaintiff was not disabled prior to April 5, 2016. *Id*.

However, the ALJ did find that Plaintiff was disabled from April 5, 2016 through May 2, 2017. *Id.* In reaching this determination, the ALJ considered Plaintiff's worsening of symptoms and limitations as documented in the treatment notes of Drs. Williams, Patil, and Nazarian. (A.R. 31-33). Plaintiff's own testimony regarding symptoms and limitations was also consistent with the medical evidence from that time period. (A.R. 32). The ALJ determined that Plaintiff's RFC decreased based upon his heightened limitations, and Plaintiff was prevented from being able to perform his past relevant work as a barber. (A.R. 33). Furthermore, the VE had testified that during that one year period of disability, no jobs existed in the national economy for Plaintiff based upon his age, education, work experience, and RFC. (A.R. 34).

As a final matter, however, the ALJ determined, that from May 3, 2017, Plaintiff was no longer disabled, since Plaintiff experienced improvement in his conditions and did not develop any new impairments. *Id*. The ALJ reasoned that Plaintiff no longer had an impairment or combination of impairments that met the severity of impairments on the Impairment List. *Id.* The ALJ noted several treatment modalities, including injections, a trial spine simulator, and a

permanent stimulator, all of which helped alleviate some of Plaintiff's pain after May 3, 2017. (A.R. 35). Dr. Patil noted some positive clinical findings following the placement of the permanent spinal cord stimulator, and Plaintiff admitted an eighty percent relief in pain, as well as being independent in all activities of daily life. *Id*.

The ALJ noted that throughout 2017, Dr. Williams examined and diagnosed Plaintiff with chronic pain syndrome, including in December 2017, when Plaintiff continued to complain of back and knee pain. *Id*. However, the ALJ explained that Dr. William's treatment notes indicated that "the claimant walked with a fairly normal gait" and each of his evaluations was accompanied by normal clinical findings. Thus the ALJ determined that Dr. William's opinion was conclusory and gave Dr. William's opinion little weight. (A.R. 35-36). Dr. Williams also prepared a separate medical source statement in December 2017, stating that Plaintiff's physical abilities were limited by advanced degenerative joint disease at the lumber spine, bilateral knees, and shoulders, in addition to chronic pain disorder. (A.R. 36). The source statement recommended that Plaintiff would have to recline after taking medication several times a workday, aside from regularly scheduled breaks. *Id*. It also further placed significant restrictions on Plaintiff's ability to reach, handle and finger bilaterally. *Id*. The source statement further suggested that Plaintiff would need additional breaks several times a day for 20 to 40 minutes, and would be absent from work more than four times per month due to his symptoms and treatment. *Id*. Again, the ALJ afforded this opinion little weight despite the physician's lengthy treatment history with Plaintiff. *Id*. The ALJ so concluded, because the source statement was written in checkboxes rather than narrative form, and was not supported by Dr. William's own treatment records, which noted relatively minimal clinical findings. *Id*.

13

In conclusion, the ALJ's final RFC determination accorded Dr. Patil's findings more weight than Dr. William's opinion, due to the lack of evidence supporting Dr. William's findings. *Id*. This decision was also influenced by Plaintiff's testimony that his pain had resolved to some extent under Dr. Patil's treatment recommendations. *Id*. Accordingly, relying on the VE testimony, the ALJ found that Plaintiff was able to perform various sedentary jobs since May 3, 2017, such as:

- Order Clerk (D.O.T. 209.567-014; SVP 2; Sedentary) with more than 120,000 jobs nationally;

- Assembler (D.O.T. 739.687-066; SVP 2; Sedentary) with more than 90,000 jobs nationally; and

- Table Worker (D.O.T. 739.687-182; SVP 2; Sedentary) with more than 100,000 jobs nationally.

*Id*. The ALJ also determined that Plaintiff's disability ended May 3, 2017, and he has not become disabled again since that date. (A.R. 37-38).

## II.   STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed,

"substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id*. at § 1382c (a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id*. at § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5  (1987). If a claimant is presently

engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id*. A claimant who does not have a severe impairment is not considered disabled. *Id*. at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id*. at § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id*. An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains

the residual functional capacity to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141. If the claimant is able to perform previous work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. *Id*.

## III.    DISCUSSION

On appeal, Plaintiff raises two separate arguments as to why the ALJ's decision is unsupported by substantial evidence. First, Plaintiff contends that the ALJ failed to properly weigh the opinion of Eric Williams, M.D., from December 2017, that Plaintiff was medically disabled. (Moving Br. at 18.) Plaintiff explains that because of his long treating history with Dr. Williams and because Dr. William's opinion was consistent with the medical record, the ALJ wrongly discounted the doctor's opinion of Plaintiff's RFC since May 3, 2017. *Id*. at 18-23. Plaintiff also argues the ALJ's RFC determination was erroneous because it was determined without support from the medical record. *Id*. at 25. In particular, Plaintiff takes issue with the RFC determination as of May 3, 2017 ("Third RFC"), and how the ALJ overlooked Dr. Williams' source statement and Plaintiff's own reports of severe pain. *Id*. at 25-28. Therefore, Plaintiff avers that the ALJ's decision is not supported by substantial evidence.

In the Third RFC determination, the ALJ found that "beginning May 3rd, 2017, the claimant has had the residual functional capacity to perform sedentary work[.]" (A.R. ¶ 35). The ALJ came to this conclusion based on Plaintiff's several treatment modalities, which helped alleviate some of his pain. *Id*. These procedures include knee injections, a trial spine stimulator, and implantation of a permanent stimulator. *Id*. Plaintiff admitted the spinal stimulators relieved between 50 and 80 percent of his pain during 2017 doctor's examinations, he reported independence in all activities of daily living, and acknowledged an overall improvement in functionality. *Id*. Dr. Patil's records through November 2017 failed to record any worsening of Plaintiff's symptoms, and even found that he was "doing well" with the spinal stimulator with occasional flares, along with normal range of motion at the knees. *Id*.

### a. The opinion of Eric Williams, M.D.

As the finder of fact, the ALJ is charged with a duty to evaluate all the medical opinions in the record under the factors set forth in the regulations and to resolve any conflicts. 20 C.F.R. § 416.927. The ALJ is responsible for considering all physician opinions together with the entirety of the medical record. 20 C.F.R. § 416.927(b). The ALJ evaluates every medical opinion and decides the weight each is given, following the listed factors in the regulations. 20 C.F.R. § 416.927(c). If a treating physician's opinion conflicts with the medical record, then the ALJ may accord that opinion less than controlling weight, or even outrightly reject it, so long as a reasonable explanation is given. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citing *Plummer*, 186, F.3d at 429; *Frankfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988); *Kent v. Schweiker*, 710 F.2d at 115 (3d Cir. 1983)). Ultimately, it is within the province of the ALJ to decide which physician to credit, but that task must be performed by considering all of the evidence. *Plummer*, 186, F.3d at 429.

Here, Plaintiff takes issue with the ALJ's decision to discount Dr. Williams' source statement from December 2017.  In this statement, Dr. Williams opined that Plaintiff was limited by advanced degenerative joint disease at the lumbar spine, bilateral knees, and shoulders in addition to chronic pain disorder. *Id.* at 36. The Doctor also remarked that Plaintiff's symptoms constantly interfered with attention and concentration, requiring him to medicate and recline at inconvenient times throughout the workday. *Id.* In addition to physical limitations on Plaintiff's ability to reach, handle, and finger bilaterally, Dr. Williams stated that Plaintiff would need additional absences from any work more than four times per month due to his symptoms and treatment. *Id.*

The ALJ adequately explained why Dr. Williams' assessment in December 2017 was accorded little weight: "Despite his lengthy treating history with claimant, the opinions here were offered by way of checkboxes rather than narrative form, and are not supported by Dr. Williams' own treatment records, which note relatively minimal clinical findings." (A.R. 36.) Indeed, the form of Dr. Williams' source statement weighs against affording it greater weight. *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) (finding that form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best); *Zonak v. Commissioner of Social Security*, 290 F. App'x. 493, 497 (3rd Cir. 2008) (finding that ALJ did not err when the ALJ rejected the opinion of a treating physician because the physician's opinion was provided in a checkbox format without supporting notes); *Griffies v. Astrue*, 855 F. Supp. 2d 257, 270 (D. Del. 2012) (remanding an ALJ's decision that heavily relied upon the treating physician's checked-boxes opinion).

Moreover, the ALJ found that Dr. Williams' opinion on the source statement contradicts many of the Doctor's own medical diagnoses and notes. *Id.* For example, while Dr. Williams

indicated that Plaintiff had chronic disabling back pain as of December 2017, physical examinations performed by Dr. Williams during the same time period detailed normal back, musculoskeletal, and lower extremity findings, as well as notes reflecting the improvement in Plaintiff's pain. (A.R. 732-43.) And, although Plaintiff argues that these findings came from visitations focusing on diabetes treatment, Dr. Williams, nevertheless, performed thorough physical examinations at these appointments. (A.R. 584, 737-38.) Moreover, Dr. Patil also noted positive improvement in Plaintiff's pain management and his physical functionality after the spinal cord procedures in February and April 2017. (A.R. 446, 463.) Indeed, Dr. Patil concluded Plaintiff was "doing well," while experiencing some flare ups in the months after the procedures. (A.R. 410-44.) In fact, Plaintiff, himself, reported an overall improvement, with an eighty percent decrease in pain from the first spinal procedure. (A.R. 446, 463).

In short, the ALJ found that the December 2017 opinion is inconsistent with the medical record, and thus, assigned little weight to it. *Id.* While Dr. Williams accompanied that opinion with copious medical records (Moving Br. at 24), the ALJ found that Dr. Williams' opinion was inconsistent with other treating physician's diagnoses, Plaintiff's own subjective comments regarding his health and pain, and Dr. Williams' own medical records after May 2017. (A.R. ¶ 36). Accordingly, the Court concludes that the ALJ's decision to discount Dr. William's December 2017 source statement was based on substantial evidence.

### b.  Other Medical Evidence

Other than Dr. William's opinion, Plaintiff argues that other medical evidence in the record also do not support the ALJ's Third RFC determination, namely, that there is no evidence that his back pain had improved after May 2017. I disagree.

A claimant's RFC is the most he can physically preform despite his functional limitations. 20 C.F.R. § 416.945(a)(1). Claimants bear the responsibility of proving they are disabled. 20 C.F.R. § 416.912(a). When weighing the medical or non-medical evidence, the ALJ determines the weight of such evidence by providing sound reasoning for discounting or favoring it. *See Burnett v. Comm'r*, 220 F.3d 112, 121 (3d Cir. 2000). In that regard, to the extent the ALJ finds the claimant's reported limitations to be less than credible, that evidence may be omitted from the RFC determination. *See Burns v. Barnhart*, 312 F.3d 113, 129-30 (3d Cir. 2002).

Here, upon evaluating the medical record and VE's testimony, the ALJ determined that beginning on May 3, 2017, Plaintiff was no longer disabled and could perform sedentary work with eleven limitations. (A.R. 35.) The ALJ based his findings on Plaintiff's two spinal stimulator procedures which improved his reported pain by between 50 and 80 percent. *Id*. Also, Plaintiff self-reported that he was independent in activities of daily living during this time period. *Id*. Moreover, although the ALJ noted Plaintiff's remaining eleven limitations, the medical record from May 2017 revealed improved strength in the lower extremities, only mildly diminished strength in numerous right-sided joints, normal range of motion and full strength at the knees, and reduced lumbar spine mobility. *Id*.

Plaintiff maintains that the ALJ failed to properly consider the medical record in formulating the Third RFC. Plaintiff, again, emphasizes that the ALJ failed to properly weigh Dr. Williams' opinion from December 2017. Additionally, Plaintiff argues that the ALJ ignored Plaintiff's self-report that he was in severe pain, and that his pain never dropped below a score of eight out of ten. (Moving Br. at 25-26; Reply Br. at 4.) Plaintiff criticizes the ALJ for failing "to craft a logical bridge" between Plaintiff's Third RFC determination and objective findings in the record. *Id*. at 27.

Turning first to Plaintiff's reported pain, as an initial matter, the mere fact that a claimant experiences pain does not mandate a finding that the claimant is disabled. *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986). Instead, the ALJ considered Plaintiff's own testimony of his pain, but chose to accord it little weight. The ALJ found that the "claimant's statements concerning the intensity, persistent and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (A.R. 36.) Indeed, credibility determinations are within the province of the ALJ. *See Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 189 (3d Cir. 2007) (stating that an ALJ's credibility determination should only be rejected in an "extraordinary case"); *Arreizaga v. Berryhill*, No. 17-10631, 2019 WL 851581, at *8 (D.N.J. Feb. 21, 2019) (D.N.J. Feb. 20, 2019) (stating that an ALJ's credibility determinations are entitled to great deference, and "[a]n ALJ may discount a claimant's subjective complaints if they are inconsistent with the evidence of record."). The ALJ determined that Plaintiff's self-report of severe pain was belied by other medical evidence. For example, throughout 2017, plaintiff reported that he could perform activities of daily living, such as bathing, dressing, and other daily tasks without assistance. (A.R. at 433; 437; 450.) Additionally, examinations with Dr. Patil from prior to, and after, May 2017, revealed improved strength in Plaintiff's lower extremities, with only mildly diminished strength in the right hip flexors, as opposed to the diminished strength in numerous right-sided joints that Plaintiff had previously experienced. (*Compare* A.R. 530-31 with A.R. 421-22, 426-27. 434. 438-39). As a result, the ALJ was convinced that Plaintiff's condition improved after May 2017, such that Plaintiff's complaint of severe pain was not credible. I find such a determination is supported by substantial evidence.

Finally, Plaintiff contends that the ALJ failed to draw a "logical bridge" between the medical record and the Third RFC determination. (Moving Br. at 27.) Particularly, Plaintiff insists

that the ALJ substituted his own subjective opinion instead of relying on the treating physician's opinion. *Id*. Plaintiff's argument is not persuasive. As I have stated *supra*, the ALJ need not accept a treating physician's opinion in determining a claimant's RFC. 20 C.F.R. § 416.927(c)(2). Instead, the regulations explain that the ALJ must consider medical opinions in totality with the rest of the relevant evidence in the record. *See* 20 C.F.R. § 416.927(b). To that end, the regulations provide that "[a]lthough [the Commission] consider opinions from medical sources on issues such as . . . your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner." *Id*. The Third Circuit, in *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011), advised that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." In fact, "the ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision." *Id*. at 362; *see also Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC.")

I find that there is substantial evidence for the ALJ's Third RFC determination. The ALJ noted the substantial improvement in Plaintiff's pain and the lack of worsening symptoms, as evidenced by both Dr. Patil's and Dr. Williams' reports after May 2017. The ALJ also properly discredited Dr. Williams' December 2017 opinion by pointing to contradictory evidence in the medical record, as discussed *supra*. In sum, the ALJ's Third RFC determination is supported by evidence of sustained improvement following Plaintiff's temporary and permanent spinal stimulator procedures. (A.R. 35-38).

## IV.    CONCLUSION

For the reasons set forth above, the Court finds that the ALJ properly weighed the opinion evidence of Dr. Williams, and the ALJ's conclusions are supported by substantial evidence in the record. Accordingly, the ALJ's decision is affirmed, and an appropriate Order shall follow.


DATED: July 27, 2020                                            /s/ Freda L. Wolfson
                                                               Hon. Freda L. Wolfson
                                                               U.S. Chief District Judge